UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LITORIA D. BLOW,

        Claimant,

    v.                                    2:09CV220

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Claimant brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and supplemental security income (SSI) under the Title XVI of the Social Security Act. By order filed July 27, 2009, this action was referred to a United States Magistrate Judge[1] pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the final decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

As a child, claimant was diagnosed with leukemia. Based on an application filed on her behalf on June 28, 1993, claimant was determined to be disabled effective June 1, 1993. Upon review of her claim, it was determined that claimant's disability ceased on July 31, 2000, and her

---

[1]The Order of Referral designated United States Magistrate Judge James E. Bradberry who retired effective January 31, 2010. This Report and Recommendation was prepared by Judge Bradberry's duly appointed successor, United States Magistrate Judge Douglas E. Miller, who was appointed effective February 1, 2010.

eligibility for SSI would terminate effective September 30, 2000. Claimant filed a request for reconsideration and, upon denial, a request for an administrative hearing. On July 22, 2002, Administrative Law Judge (ALJ) O. Price Dodson determined that claimant's benefits ceased as of July 31, 2000, due to medical improvement. At the time of that hearing, ALJ Dodson determined that claimant had severe asceptic necrosis of her right elbow and the residuals of chemotherapy, of less than listing level severity. On November 1, 2002, the Appeals Council of the Office of Hearings and Appeals of the Social Security Administration denied review of the ALJ's decision. (R. 22).[2] Claimant did not seek further review.

On August 26, 2005, claimant filed another application for SSI, alleging disability beginning June 1, 1993, (R. 21, 94), due to leukemia in remission, vascular necrosis, and depression, (R. 100). The Commissioner denied claimant's application initially on January 13, 2006, and upon reconsideration on May 8, 2006. (R. 21). On May 22, 2006, claimant requested an administrative hearing, (R. 42), which was conducted May 2, 2007. (R. 21).

On June 4, 2007, ALJ William T. Vest, Jr. found that claimant was not disabled within the meaning of the Social Security Act, and denied her claim for SSI. (R. 21-35).[3] On March 24, 2009, the Appeals Council denied review of the ALJ's decision (R. 6-8), thereby making the ALJ's decision the final decision of the Commissioner.

---

[2]"R." refers to the administrative record.

[3]In making his decision, ALJ Vest considered the findings of ALJ Dodson and accorded them "significant weight." (R. 22); see AR 00-1(4), 2000 WL 43774 (S.S.A.)

Pursuant to 42 U.S.C. § 1383(c)(3), on May 15, 2009, claimant filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Claimant was born on March 1, 1978. (R. 406). She graduated from a home-bound high school program, and has attended Paul D. Camp Community College since 2004. (R. 254; 406-07; 410). As of the spring semester 2007, claimant had earned forty-six credits and achieved a cumulative grade point average of 2.878. (R. 151).

In addition to containing a school transcript, the administrative record includes two letters from Martha N. Kello, an associate professor at the community college who was claimant's instructor for several courses. (R. 146-48). In a letter to claimant's attorney written at claimant's request, Professor Kello opined that claimant had an "apparent lack of inter-personal skills" and possessed low-level cognitive skills, both of which would preclude Kello from providing claimant with a positive reference for working with young children. (R. 148). Professor Kello also wrote that, based on her observations, claimant had a low level of frustration. Id. As to claimant's strengths, Professor Kello indicated that claimant kept perfect attendance and completed all assignments and projects on or before due dates. (R. 146-47).

Claimant underwent two consultative evaluations with Edward H. Spain, Ph.D., a clinical psychologist with Suffolk Neuropsychological Services. (R. 253-58; 312-316). Dr. Spain first examined claimant on July 14, 2003. (R. 253). At that time, claimant appeared with styled hair and neatly manicured nails. (R. 256). She reported that she prepared simple meals for herself, helped with the household cleaning and dusting, shopped with her mother for groceries, and cared

3

for the family pets. (R. 255). Claimant reported that she enjoyed attending movies, playing video games, visiting the local shopping mall, and having her nails done. (R. 256).

Dr. Spain observed that claimant showed no overt evidence of psychomotor retardation. Her gait was somewhat slowed and deliberate, but otherwise essentially normal. Her speech was fluent, adequately articulated, and relevant to the topics of discussion. She reported no history of perceptual disturbances or hallucinations nor did she appear to be responding inappropriately to internal stimuli. Her thought process and the content of her thoughts were within normal, age-appropriate limits. She was generally alert and aware of her immediate surroundings. Claimant displayed no obvious deficits in her basic sensory or motor functioning (other than limited use of her right arm, which she held in a guarded position close to her body when at rest). Claimant's memory function was mildly weak. Her concentration, though an area of weakness, was adequate for the purpose of limited mental status testing. Claimant's intelligence appeared to fall within the Low Average to Average range upon casual observation. Her social judgment and insight were intact in response to standard questioning and her activity level was within normal limits for her age. (R. 256).

Dr. Spain diagnosed claimant in 2003 with an adjustment disorder with mixed anxiety and depression. (R. 257). In considering claimant's overall functioning, Dr. Spain opined that claimant was cognitively capable of performing simple and repetitive tasks on a limited basis without special supervision or assistance. (R. 258). However, Dr. Spain also opined that claimant would likely have difficulty maintaining adequate concentration and pace of production during a four-hour workday and that she would be prone to episodes of emotional deterioration from stress encountered in the workplace. Id.

4

Claimant next saw Dr. Spain for a consultative examination on October 25, 2005, (R. 312), at which time he diagnosed claimant with a depressive disorder not otherwise specified, (R. 315). At that time, Dr. Spain also opined that claimant's depression would significantly interfere with her ability to complete a normal work day or work week. Although she was likely to behave appropriately with supervisors or co-workers, Dr. Spain expressed concern that she may have difficulty dealing with the general public. He wrote that she was not likely to be able to deal with the usual stresses encountered in the competitive workplace, and that she would be prone to episodes of emotional deterioration from stress encountered in the workplace. (R. 316).

In the same report, however, Dr. Spain opined that claimant was mentally capable of maintaining regular attendance in the workplace, that she was likely able to comprehend and accept simple, concise oral or written directions from a supervisor without difficulty, and was mentally capable of performing detailed and complex mental tasks on a limited, part-time basis. (R. 316). Dr. Spain's opinion was endorsed by two psychological consultants in their Mental Residual Functional Capacity Assessments. (R. 337-40; 357-60).

With regard to her physical impairment, claimant twice saw Robert G. Edwards, M.D., a consultative examiner: once before and once after the instant application for SSI. (R. 277-84; 317-25). Based on observations during the first visit in March 2004, Dr. Edwards found that claimant could stand and walk for four hours out of an eight-hour day, sit for eight hours out of an eight-hour day, walk without an assistive device, lift twenty pounds occasionally and ten pounds frequently, and bend occasionally. Dr. Edwards also found that claimant could not stoop due to back pain and that she had limitations with gross and fine manipulation in both hands because of numbness, weakness, and pain. (R. 281).

5

In October 2005, claimant was examined by David G. Belvin, M.D., a consultative examiner with Smithfield Medical Center. (R. 155). Dr. Belvin observed that claimant had limited range of motion in her back, but had negative straight leg-raising testing bilaterally. Dr. Belvin also noted that a neurological exam of claimant's lower extremities was unremarkable. With regard to claimant's right elbow, Dr. Belvin observed that claimant's range of motion at the elbow was limited to approximately ninety degrees. Dr. Belvin noted no limitations regarding the use of claimant's left upper extremity. (R. 155).

Based on his examination, Dr. Belvin opined that claimant could only occasionally lift and carry five pounds due to avascular necrosis, stand and walk for a total of two hours, and sit for less than one hour. (R. 157). It was his further opinion that claimant could occasionally balance and never climb, kneel, crouch, stoop, or crawl. Dr. Belvin opined that claimant had no problem seeing, hearing, or speaking, but had difficulties reaching, handling, feeling, and pushing/pulling. Dr. Belvin opined that claimant needed to avoid heights, moving machinery, temperature extremes, and chemicals due to her leukemia that was in remission. (R. 158).

In November 2005, plaintiff was again examined by Dr. Edwards. (R. 317-22). Dr. Edwards reported that claimant displayed no paravertebral muscle spasms and experienced no tenderness, crepitus, effusion, or deformities. Claimant's sensory exam was normal, her reflexes were 3+ left and right, Babinski testing was negative, and her cranial nerves were grossly intact, II through XII. On motor strength testing, claimant had grip strength on the right of 3/5 and on the left of 5/5, upper extremity strength on the right of 3/5 and on the left of 5/5, and lower extremity strength on the right of 4/5 and on the left of 5/5. (R. 320).

Based on his observations, Dr. Edwards opined that claimant could stand and walk two hours out of an eight-hour day and sit for six hours out of an eight-hour day. Dr. Edwards further opined that claimant needed to get up fairly frequently, and could lift twenty pounds occasionally and ten pounds fairly frequently with her left hand, but could not carry anything a significant distance because of scoliosis of the back. Dr. Edwards also stated that claimant experienced postural limitations involving bending, stooping, and crouching because of scoliosis and that claimant could only bend occasionally. As for manipulative abilities, Dr. Edwards opined that claimant experienced definite gross and fine limitations in her right hand, but showed no limitations with use of her left hand. (R. 321). Consistent with Dr. Edward's manipulative testing, range of motion testing showed that claimant had normal range of motion in her left hand and fingers. (R. 322).

X-ray testing of claimant's thoracic spine in November 2005 showed that she did not have a fracture. There was a mild thoracolumbar scoliosis with no other abnormalities in vertebral alignment. (R. 326).

At the hearing, claimant testified that despite being tired, she was attending classes on Tuesdays and Thursdays. (R. 408; 410-11). Claimant also testified that she was currently not being treated by anyone because her Medicaid card was taken from her. (R. 408). Claimant's mother also testified about claimant's limitations and her pursuit of a college education as well. (R. 414-23). Specifically, her mother testified that claimant had difficulties with her arm and spent time resting during the day. (R. 416). She further testified, however, that claimant advanced to the second year of college and prepared at home for classes. (R. 419-20). Additionally, claimant's

mother discussed treatment and explained that when claimant requires care for her aliments such as infections, she is able to visit a clinic. (R. 420-21).

Robert Edwards was called to testify as an impartial vocational expert (VE). In response to a hypothetical framed by the ALJ, Mr. Edwards testified that jobs were available in the state and national economy for an individual of claimant's age, education, and work experience who is limited to work activity that was light and involved unskilled or simple, repetitive job tasks, needed to alternate sitting and standing, could occasionally reach with her right dominant hand and arm, could occasionally bend or stoop, but could not climb, could not work at unprotected heights or around dangerous machinery, could not perform tasks overhead, and had no problem using the left non-dominant hand. (R. 427-28). Mr. Edwards identified unskilled, light and sedentary work such as information clerk (670 locally/135,000 nationally), unarmed security guard (600 locally/125,000 nationally), surveillance system monitor (550 locally/112,000 nationally), and office clerk (1,150 locally/235,000 nationally). (R. 427-28). Claimant's attorney asked to amend the hypothetical to add claimant's asserted limitation of being prone to "episodes of emotional deterioration." The VE testified that such an individual would be precluded from working. (R. 429).

At the hearing, claimant also called as a witness her own VE, Carl Handburry. Mr. Handburry testified that, after interviewing claimant and reviewing her complete file, it was his opinion that there are no jobs in the national economy that claimant could perform. (R. 426).

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether such decision was supported by substantial evidence on the record and

whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[4] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI under Title XVI of the Social Security Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C.

---

[4]"The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

§ 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity[5] by reason of any medically determinable physical or mental impairment[6] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment"[7] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[8] 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The

---

[5]"Substantial gainful activity" is work that: (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510 and 416.910. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. Id. at § 404.1572.

[6]"Physical or mental impairment" is defined in § 223(d)(3) of the Social Security Act as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[7]The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[8]The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.); see also infra Pt. IV, Sbpt. D.

Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A. ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) claimant has not engaged in substantial gainful activity since June 1, 1993 (the alleged onset date of disability); (2) claimant has severe impairments of avascular necrosis of the right elbow by

11

history, scoliosis, and depression[9]; (3) claimant's impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) claimant has no past relevant work, but has the RFC to perform a limited range of light to sedentary work; and (5) there are jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 21-35).

In her motion for summary judgment, claimant alleges generally that the ALJ's decision is not supported by substantial evidence, and also alleges the following specific errors: (1) the ALJ ignored the psychological evidence in the record; (2) the ALJ failed to give "controlling weight" to the opinion of claimant's treating physician; (3) the ALJ failed to follow the law of the Court of Appeals for the Fourth Circuit; and (4) the AlJ ignored the evidence presented by the VE's.

## B. Weight Assigned to Medical Opinions

At step four of the sequential analysis, the ALJ must first determine the claimant's RFC, which is the claimant's maximum ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e) and 416.945(a)(1). After doing so, the ALJ uses that RFC to determine whether the claimant can perform her past relevant work. Id. at § 416.945(a)(5)(i).

In the present case, the ALJ found that claimant has the RFC to perform a limited range of light to sedentary work involving lifting and carrying twenty pounds occasionally and ten pounds frequently, sitting for eight hours, and standing and walking for six hours in an eight-hour day, with the option to alternate sitting and standing as needed ("sit/stand option"). (R. 25-26). The ALJ further found that claimant has non-exertional limitations in that she can only occasionally

[9]The ALJ further found that all of the other impairments alleged by claimant were not severe "because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." (R. 25). With regard to claimant's history of leukemia, the ALJ made specific reference to the fact that claimant underwent treatment with chemotherapy and radiation, and that her leukemia has been in remission for a number of years. (R. 25).

reach with her right dominant hand and arm. Claimant is precluded from engaging in overhead work, climbing, working at unprotected heights, and working around dangerous machinery. Claimant can only occasionally bend or stoop. Finally, due to her mental impairment, claimant may only perform simple, repetitive job tasks. (R. 26).

Claimant asserts several errors in the ALJ's calculation of her RFC. Claimant first contends that the ALJ erred by assigning "moderate weight" to Dr. Spain's 2003 consultative opinion and "some weight" to Dr. Spain's 2005 consultative opinion. (R. 32-33). According to claimant, the uncontroverted testimony of Dr. Spain is that claimant is unable to finish a workday; therefore, claimant met her burden of proof and should have been awarded benefits. Second, claimant contends that the ALJ erred in declining to accord "controlling weight" to the opinion of her treating physician.

The ALJ has the responsibility of determining RFC. 20 C.F.R. § 416.946. In making this determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. In deciding the weight to assign to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. Id. at § 416.927(d)(2)-(6).

As stated above, the ALJ accorded "moderate weight" to Dr. Spain's 2003 opinion. In so doing, the ALJ noted that "the evidence of record does not support limitations in concentration or episodes of emotional deterioration to the degree suggested by Dr. Spain." (R. 32). Dr. Spain opined that claimant would have difficulty maintaining "adequate concentration and pace of

13

production during a 4-hour workday." According to the ALJ, this assessment and the degree of limitation recommended is not substantiated by the record. As noted by the ALJ:

> The claimant is attending college part-time and is able to concentrate well enough to complete assignments and pass her courses. She is not in treatment for her mental impairment [depression], is not taking any medication, and has not required inpatient psychiatric hospitalization.

(R. 32).

In 2005, Dr. Spain again opined that claimant would have difficulty dealing with the usual stresses encountered in the workplace and would be prone to episodes of emotional deterioration. The ALJ again determined that the limitations opined by Dr. Spain were not supported by the record. The ALJ specifically noted that claimant is not in treatment for her depression and "[i]t would seem reasonable that one suffering limitations to the degree opined by Dr. Spain, would require some form of mental health treatment." (R. 33).

In reviewing the record before him, the ALJ determined that it did not support a conclusion that claimant is precluded from all work activity. In particular, the ALJ made specific reference to the fact that claimant is not currently receiving any medical treatment or taking any medications. In his decision, the ALJ also cites evidence in the record that claimant was attending school and had perfect attendance. (R. 33). Having reviewed the ALJ's report, the Court finds that the ALJ correctly applied the regulations in determining what weight to assign to Dr. Spain's opinions, and his decision is supported by substantial evidence.

Claimant also contends that the ALJ erred in failing to give controlling weight to the opinion of Dr. Belvin, claimant's treating physician. As detailed above, on October 18, 2005, Dr. Belvin completed an assessment in which he opined that, due to avascular necrosis of the elbow,

14

scoliosis, and leukemia, claimant could only occasionally lift and carry five pounds, stand and walk

for a total of two hours, and sit for less than one hour. (R. 157). It was his further opinion that

claimant could occasionally balance and never climb, kneel, crouch, stoop, or crawl, and that

claimant had difficulties reaching, handling, feeling, and pushing/pulling. (R. 158). Based on this,

it was the opinion of Dr. Belvin that claimant needed to avoid heights, moving machinery,

temperature extremes, and chemicals due to her leukemia that was in remission. (R. 158).

Under the federal regulations and caselaw, a treating physician's opinion merits

"controlling weight" if the opinion "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record." Id. at § 416.927(d)(2); see Craig, 76 F.3d at 590. The general rule is that the opinion

of a treating physician receives more weight than the opinion of the non-examining consultant. 20

C.F.R. § 416.927(d)(1). However, Fourth Circuit precedent does not require that a treating

physician's testimony be given controlling weight. "[I]f a physician's opinion is not supported by

clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." Craig, 76 F.3d at 590. When the ALJ determines that the treating

physician's opinion should not be given controlling weight, the ALJ must articulate "good reasons"

for his decision. Id. at § 416.927(d)(2).

As stated above, the ALJ accorded "some weight" to Dr. Belvin's opinion. In so

doing, the ALJ noted that "the evidence of record does not support his limitations, as leukemia is in

remission and the objective evidence reflects that scoliosis is very mild. While the evidence

supports that she has some limitations due to avascular necrosis of the right elbow, there is no

evidence that she is limited in the use of her left upper extremity." (R. 32).

Having reviewed the ALJ's report and the reasons he articulated in that report, the Court finds that the ALJ supplied "good reasons" for not giving "controlling weight" to Dr. Belvin's opinion. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589. Dr. Belvin's opinion is contradicted in the record and the ALJ did not err by refusing to give his opinion controlling weight. Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).

### C. Consideration of Claimant's Pain

Also in step four of the analysis, the ALJ determined that "[t]he objective and clinical evidence of record does not support pain and limitations of work-disabling proportions." (R. 34). While claimant's argument is somewhat sparse on this point, it appears that she contends that, in considering her subjective complaints of pain and limitations, the ALJ failed to properly apply the law of the Fourth Circuit.

In making the determination as to whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). A claimant's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the claimant must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595. "However, while a claimant must show by objective evidence the existence of an underlying

16

impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the claimant has satisfied the first step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which they affect the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. at § 416.929(c)(3).

In the present case, the ALJ followed the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit. As to the first step, the ALJ found that claimant's "medically determinable impairments could reasonably be expected to produce a degree of the alleged symptoms." (R. 28). In other words, claimant satisfied her threshold obligation under the two-part inquiry.

With regard to the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 28). In making this determination, the ALJ summarized in great detail claimant's medical history, her statements, the treatments offered to claimant, the degree to which she pursued those treatments, and other evidence regarding her daily activities. Giving careful

17

consideration to all of the available evidence and affording claimant the "full benefit of the doubt in regard to her allegations," the ALJ found that the record did not support pain and limitations of work-disabling proportions. The Court finds that the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating claimant's pain, and supported his decision with substantial evidence.

To the extent claimant contends that the ALJ erred in evaluating her credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a number of reasons for not fully crediting claimant's statements. There are no exceptional circumstances which would warrant disregarding the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated claimant's credibility.

### D. Vocational Evidence

Finally, claimant contends that the ALJ erred at step five of the analysis. Claimant alleges several errors: that the ALJ rejected the "uncontradicted" testimony of both claimant and her VE, as well as the reports of consulting psychologist Dr. Spain and treating physician Dr. Belvin, and the letter written by Professor Kello. Claimant also argues that the ALJ posed a faulty

hypothetical and, when a hypothetical containing the correct limitations was posed, both VE's agreed that there are no jobs in the national economy that claimant could perform.

At the fifth step in the sequential analysis, the ALJ must determine whether a claimant can perform any other work available in significant numbers in the national economy, considering the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1566 and 416.966. Step five is reached when the claimant is not engaged in substantial gainful activity and has a severe impairment that does not meet or equal the listings but prevents a claimant from performing past relevant work. In assessing a claimant's ability to perform other work within the economy, the ALJ will look at exertional limitations--those limitations or restrictions which impact only strength activities; as well as non-exertional limitations--those limitations and restrictions which impact non-strength activities such as concentration and ability to follow instructions. 20 C.F.R. §§ 404.1569 and 416.969. At step five, the burden of proof shifts to the Commissioner to establish that claimant has the ability to perform other work. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Normally, if a claimant's RFC demonstrates that she suffers only from exertional limitations, the ALJ will consult the medical-vocational guidelines found at 20 C.F.R., Pt. 404, Sbpt. P, App. 2, to determine whether there are jobs existing that the claimant would be able to perform based on the claimant's RFC. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). However, if a claimant suffers from both exertional and non-exertional limitations, and the non-exertional condition affects the claimant's RFC to perform work of which she is exertionally capable, then the ALJ must utilize the assistance of a VE in assessing whether there are jobs in significant numbers that the claimant could perform. Id. When a VE is called to testify, the ALJ's

19

function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all the claimant's impairments so that the VE can offer "relevant or helpful" testimony. Id. at 50.

In the present case, the ALJ consulted Robert Edwards, an impartial VE. At the hearing, the ALJ posed a hypothetical based on his view of the evidence, and the claimant's limitations, and asked whether there would be jobs such a person could perform. (R. 427). Mr. Edwards testified that such a person could perform certain light and sedentary jobs such as information clerk (670 positions locally, 135,000 nationally), unarmed security guard (600 positions locally, 125,000 nationally), surveillance system monitor (550 positions locally, 112,000 nationally), and office clerk (1,150 locally, 235,000 nationally). (R. 427-28). When questioned further, the VE testified that such jobs were unskilled, comported with the Dictionary of Occupational Titles (DOT) (with the exception of the sit/stand option which the DOT does not address), and full-time. (R. 428). Mr. Edwards testified that he made the determination that such jobs would allow for the sit/stand option based on his experience in job placement. Id. In addition, while the DOT identifies the position of unarmed security guard as semiskilled, the VE testified that, based on his experience, it is an unskilled position. Id. Claimant's attorney also asked how a person with the same limitations who is also prone to episodes of emotional deterioration would fare in the workplace. Mr. Edwards testified that such an individual would be precluded from working. (R. 429). Claimant also called a VE who testified that there were no jobs that claimant could perform. (R. 426).

In step five of his analysis, the ALJ noted the fact that, when the additional limitation of being prone to episodes of emotional deterioration was added to the hypothetical, both VE's

testified that such an individual would be precluded from working. However, the ALJ essentially rejected this alteration of the hypothetical due to the finding that the evidence in the record does not support such a limitation. (R. 35).

As stated above, the Court's review of an ALJ's decision is limited to a determination of whether there is substantial evidence to support the decision. In making his findings, the ALJ correctly applied the regulations and caselaw, and specifically detailed his findings. The ALJ's decision is supported by substantial evidence. It was not error to pose a hypothetical based on those findings. Clearly, the ALJ considered the entire record as a whole, and his decision is supported by substantial evidence.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be affirmed.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

Douglas E. Miller
United States Magistrate Judge

Norfolk, Virginia
March 17, 2010

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Hughes Kennedy Reveley, Jr.
Law Office of H.K. Reveley, Jr.
P.O. Box 1352
Chesapeake, VA 23327

James Brenford Melton
708 S. Battlefield Blvd.
Suite 101
Chesapeake, VA 23322

Kent Pendleton Porter
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

_____, 2010